ALEXANDER H. ABRAHAMS & Co. *vs.* THE SOUTH-WESTERN RAILROAD BANK.

Trover lies for the conversion of bank bills.

A. borrowed from B., an incorporated bank, $4,000 in Confederate Treasury notes, to be returned within ten days, and left with B., as security, $4,000 in its own bills—the latter being more valuable than the former. A. returned within the limited time, offered to return $4,000 in Confederate Treasury notes, and demanded back the $4,000 he had left with B. as security. The latter refused to take the one or return the other: *Held,* by Moses, C. J., (Wright, A. J., concurring,) that B.'s refusal to return the $4,000 in its own bills was a conversion of those bills, and that trover lay for such conversion.

Willard, A. J., dissenting, *held,* that the circumstances of the transaction did not show that the identical bills left with B., but only that bills of the latter, to the amount of $4,000, were to be returned; that a debt was created on both sides, and that trover, therefore, did not lie.

BEFORE CARPENTER, J., AT CHARLESTON, JUNE TERM, 1869.

This was a writ of error to remove the record and proceedings, in the case stated, from the Circuit into the Supreme Court.

The case and exception are stated in a report made by His Honor the Circuit Judge, which was treated as a bill of exceptions, and is as follows:

"This was an action of trover to recover from the defendants certain of their bills, amounting, nominally, to $4,000, deposited by the plaintiffs in the said bank in 1862 or 1863. The declaration, which will be certified with the writ of error, contains only two counts, each in trover.

"A. H. Abrahams, one of the plaintiffs, testified as follows:

"In 1862, or 1863, witness had in his possession $4,000 of the bills of the South-western Railroad Bank, of the denomination of $20's and $10's, and, also, some of $5's; how many of each can't say; bills belonged to himself and son, the other plaintiff; he carried them to the bank, and asked Mr. Fuller, the Teller, to let him have the use, for eight or ten days, of $4,000 Confederate bills, which were less valuable, and hold his $4,000 of South-western Railroad bills as security, until he should return the Confederate bills; Mr. Fuller applied to Mr. Rose, the President, to know if it could be done; Mr. Fuller returned, saying he was authorized; Mr. Fuller then counted the bills which witness handed him, found $4,000, and put them aside, and then delivered to witness $4,000 in

Confederate notes; within eight or ten days after, witness called at the bank again, and asked to have his parcel of bills returned to him, offering, at the same time, the $4,000 in Confederate notes which he had borrowed; the President directed Mr. Fuller, the Teller, to give witness his package of notes, and receive the $4,000 Confederate notes, as previously agreed; Mr. Fuller then asked witness, as a favor to himself, to let matters stand until the next day, as he was very busy; witness returned the next day; Mr. Fuller told witness that Mr. Cochran, the Cashier, wished to see him, the witness; Mr. Cochran asked witness if he was not a friend of the bank; if so, why did he wish to withdraw the bills thus left by him? that, if the Confederate notes were not good, neither were the notes of that bank; witness, nevertheless, persisted in his purpose of having his bills again, but they were withheld from him; he told Mr. Cochran that he came for them, and desired to have them; but he was never allowed to have them again, nor would the bank take back the Confederate $4,000 which he had borrowed on the security of the said bills, and which he offered to return when he applied at each time; witness does not recollect what was the value of these bank notes at the time of this transaction; they were worth more than Confederate notes by, perhaps, 20 or 30 per cent.; they are now worth about 65 per cent.; he never received credit in his bank book, (which was produced and examined,) or, as far as he knows or believes, in any book of the bank, for this $4,000; it never was his intention to deposit them; he meant to leave them, as a simple pledge, to be redeemed by a return of the $4,000 in Confederate bills; on refusal of bank to return him his said bills, he did nothing—condition of country prevented; at the close of his account with the bank, in 186–, there ought to have been a balance to his credit of $6,000.

"On this evidence I ruled 'that the plaintiffs could not recover, under the form of action they had adopted, to wit: Trover— because they had not shown that they paid any money, or made any legal tender of the $4,000, or its value, when they made the demand for the package of South-western Railroad bank bills, lodged as security, or, at any other time,' and ordered a non-suit.

"To this ruling the plaintiffs did then, and still do except, for error in law."

The error assigned is as follows:

That His Honor has assumed that the obligation of the plaintiffs was to pay, or tender payment, for the bills lodged by them as security, lawful money, before they could entitle themselves to demand them. Whereas, their obligation was simply to redeem their bills, which were already their own, by returning, or offering to return, Confederate States notes to the amount of $4,000; wherefore, they pray that the said judgment of non-suit may be reversed and vacated.

*DeTreville*, for plaintiffs.

Offer of plaintiffs to return the Confederate notes, received by them, was a compliance with their contract or obligation, and entitled them to the package of bills which they had pledged. The refusal to deliver, when demanded, was a conversion.—Story on Bail., §§ 341, 345, 346; Jones on Bail., 79, 80; *Bristol* vs. *Bush*, 7 Johns. R., 254.

A pawner who offers to redeem *within* the time and in the manner agreed on, becomes, thereby, entitled, unconditionally, to the thing pawned, and a refusal to deliver is a conversion; 10 Johns. R., 471; *McLean* vs. *Walker*, 2 Esp. N. P., 625, margin.

Trover is the proper action for the recovery of choses in action, as bank bills, promissory notes, bonds, &c.—*Todd* vs. *Cruikshanks*, 3 Johns. R., 43; 12 Johns. R., 484; *Clowes* vs. *Hawley*, 2 Esp. N. P., 543; 2 Chit. Pl., 835, and notes.

*Pringle*, contra.

It was necessary that the plaintiffs should have proved that they made a legal tender of the value, either of the $4,000 of the South-western Railroad Bank notes, or of the Confederate notes, before they can maintain their action, and that they made no such tender. *Parker* vs. *Simons & Epping*, 2 McM., 188; *Thorington* vs. *Smith* (8 Wal., 1); *Phillips* vs. *Hooker*, Am. Law. Reg., Vol. 7, No. 1, p. 16.

The tender of the Confederate notes by the plaintiffs is not proved by the evidence, and would not be sufficient, if proved.—Const. U. S., Art. I, § 10; Stat. U. S., 18th January, 1837, 1 Bright., 152; Stat. U. S., 11th July, 1862, 2 Bright., 109.

April 8, 1870. The opinion of the Court was delivered by

MOSES, C. J. To sustain the action of trover, one must have the

right of property with the right to possession. If these unite in him, and conversion is proved, a recovery must follow.

It is conceded in the argument that bank notes may be the subject of this action. The authorities, both in England and our own State, sustain that conclusion.

The objection to the plaintiffs' right of recovery was put, both by the Judge below and the counsel for the defendant in his argument here, upon the ground that when demand was made for the parcel of South-western Railroad Bank bills, they failed to show that they paid any money or made any legal tender of the four thousand dollars or its value.

The action was not brought for the recovery of a debt, but for damages for the conversion of specific *choses in action.*

If the bank had disposed, by sales, of the notes left with them, the plaintiffs would have been at liberty to waive the tort and sue for money had and received to their use. The gist of the action was the conversion, and there was, therefore, no necessity, on the part of the plaintiffs, to pay any money, or make any legal tender, to entitle them to a restitution of the bills in the hands of the defendant. The bank did not consider that the agreement imposed a liability on the plaintiffs, as for a debt due. The notes they left were of greater value, as shown by the evidence, than those they received. The refusal to return the South-western Railroad Bank bills was not because the notes they were offering, when they claimed their own under the agreement, did not constitute a legal tender.

Even if there had been a debt due, the objection to the character of the tender was waived when the refusal to accept was not put upon that ground.—5 Rob. Prac., 942.

The transaction amounted to a pledge or pawn, which, in the common law understanding of it, Mr. Justice Story, in his work on Bailments, Section 286, defines "to be a bailment of personal property as a security for some debt or engagement."

The testimony discloses the following facts: In consideration of the defendant delivering to the plaintiffs, for their use, the sum of four thousand dollars in Confederate Treasury notes, they left with the defendant that amount in its own bills, as security for the return of the like sum in the said notes in eight or ten days. Within the time limited, one of the plaintiffs called at the bank, offered the four thousand dollars in the same currency which they had received, and asked for their parcel of bills. The President directed the Teller to deliver the package, and receive the four thousand dollars

Confederate notes, as had been previously agreed. The Teller asked the party who had so called, as a favor to him, as he was busy, to let the matter stand until the next day. This was assented to, and he returned the following day, when the Cashier, (who did not deny the agreement,) after some conference between them, refused, on demand, to restore the bills so left, or to receive the four thousand dollars in Confederate money. No entry of the transaction was made in the books of the bank, either as a charge or a credit, although the plaintiffs were dealers with it.

The whole legal title, by a pledge or pawn, does not pass conditionally, as in the case of a mortgage; but the pledgee has only a special property during the time, and for the objects for which it is pledged.—Story on Bailments, § 287; 2 Parsons on Contracts, 112.

Lord Holt, in *Baldwin* vs. *Cole*, 6 Mod., 212, says: "The very denial of goods to him that has a right to demand them, is a conversion; for what is a conversion but an assuming upon one's self the right of disposing of another's goods; and he that takes upon himself to detain another man's goods from him, without a cause, takes upon himself the right of disposing of them."

An assertion of right inconsistent with that of the owner to exercise dominion over his property is a conversion.—6 Bac. Abr., 677.

A demand and refusal is presumptive proof of a conversion, because it is the assertion of a control of property inconsistent with the general dominion over it which belongs to the owner.

Where personal property is held under pledge, and the full demand be tendered to the holder and he refuses it, the refusal to deliver on such tender is evidence of conversion.—1 Rol., 1, 50; 10 Coke, 56, C; 1 Comyn's Digest, 1, Title "E," 439; 2 Parsons on Contracts, 274; *Ratcliffe* vs. *Vance*, 2 Mill's C. R., 241.

We do not perceive in the case anything which forbids the application of the rules which strictly pertain to the action of trover, nor can we discover how their force is weakened, because the transaction was with a bank. The liability of the defendant did not arise out of a dealing with a bank in the ordinary course of its business. It was a matter entirely outside of the usual routine of its operations. It is, nevertheless, bound, if loss ensues from its tortious acts. It made no difference that the article pledged was money, or its own bills, which represented it. The same principle is to govern as if the article deposited had been a watch or a jewel.

The obligation which devolved on the bank was properly under-

stood by its President when he directed the return of the package of bills to the plaintiffs, which they had left, and the acceptance of the notes which they tendered.

It is ordered and adjudged, that the non-suit be set aside, and the case remanded for trial.

*Wright*, A. J., concurred. (*a.*)

WILLARD, A. J., dissenting. I am compelled to differ from the majority of the Court in the conclusions arrived at by them. Conceding that the ground on which the Circuit Judge placed his judgment of non-suit is not tenable, still, it does not appear to me that the action can be maintained. If this view is correct, it follows that the non-suit ought to stand.

The plaintiff, in order to succeed in his action of trover, must establish that the defendants engaged to hold the specific notes delivered by him to them, as a security merely for the return of the Confederate currency loaned by them to him, and to return those specific notes upon the performance of the condition upon which they were held. It is not enough, to maintain this form of action, that the defendants merely undertook to deliver, upon the performance of the condition, notes of the same character and value as those deposited by the plaintiff. Nor can this action be maintained if the defendants had the right to use the notes in question.

The contract of the parties is to be looked to as decisive of this question. That contract was neither the ordinary contract that arises out of a bank deposit, in virtue of which a cash credit is immediately given to the depositor, and which gives rise to the relation of debtor and creditor, nor was it strictly a case of special deposit, where the bank is a mere bailee, bound to return the property specifically.

The plaintiff proved that he borrowed $4,000 of Confederate currency of the defendants, upon a deposit, with them, of bills of the defendants to a like nominal amount. He was to use the currency borrowed, for eight or ten days. It does not appear that he was to pay interest upon the loan. In point of fact, he tendered the same amount borrowed without interest added.

The language employed in concluding the agreement must be

considered in relation to the subject-matter of the contract, and the relations of the parties.

The notes exchanged were, in a commercial sense, money, and were so treated by the parties. The individual bills actually interchanged cannot be supposed to have been the subject of special consideration between them. What they looked to was simply the kind and value of the currency in reference to which they were dealing.

The defendants' business was to lend money for profit, and the plaintiff must be deemed to have approached them in that character. The transaction must be deemed a business transaction. If the bank were not to receive interest, and it is not pretended that they were, their only motive in making the transaction was the use of the currency received from the plaintiffs by way of exchange.

It appears that the bills of the South-western Railroad Bank were counted by the defendants and "put aside." They were undoubtedly placed with other bills of a similar character. As these bills were the defendants' own obligations, it is hardly probable that they would deem it necessary to resort to any extraordinary means of safe-keeping.

If the plaintiff's idea of this case is correct, then the defendants were bound to keep the identical bills delivered by him, and to return them. If they placed them with their other funds, and paid them out, they were guilty of a conversion. Nor could they purge themselves of the tort by having other bills, of like character and amount, ready to deliver to the plaintiff upon his returning the currency borrowed of them. It is not a reasonable view to put upon the plaintiff's testimony to assume that any such consequence was contemplated or intended by the parties.

The Courts have always discouraged attempts to convert ordinary commercial transactions into cases *ex delicto*, especially when, as in the present case, the effect will be to hold one party to his obligations, and allow the other to escape without fulfilling his.

It is one of the most admirable features of the common law that, while protecting the citizen in the enjoyment of his property to the extent of indulging his affections and tastes, and even his capricious likes and dislikes, it yields to the liberal spirit of commerce, and fosters confidence by encouraging mutuality and open dealing, and discouraging reserve and surprise.

I cannot regard the testimony in the case as establishing a tortious conversion on the part of the defendants.